Jeffrey L. Silvestrini (Bar No. 2959)
Cohne Kinghorn, PC
111 E. Broadway, 11th Floor
Salt Lake City, UT  84111
801.363-4300
jeff@cohnekinghorn.com

Joseph E. White, III *(pro hac vice to be filed)*
Lester R. Hooker *(pro hac vice to be filed)*
Saxena White P.A.
Boca Center
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
561.394.3399
lhooker@saxenawhite.com

Richard A. Maniskas *(pro hac vice to be filed)*
Katharine Ryan *(pro hac vice to be filed)*
Ryan & Maniskas, LLP
995 Old Eagle School Rd., St. 311
Wayne, Pennsylvania 19087
Telephone: (484) 588-5516
Facsimile:  (484) 450-2582

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MELANIE DAVIS, Individually and on Behalf of All Others Similarly Situated, | **CLASS ACTION** |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| SKULLCANDY, INC., SETH DARLING, JASON HODELL, and RICHARD P. ALDEN, | Case No.: |
| Defendants. | **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.     NATURE OF THE ACTION ...........................................................................................1

II.    JURISDICTION AND VENUE ....................................................................................4

III.   PARTIES ..........................................................................................................................4

IV.    SUBSTANTIVE ALLEGATIONS ..............................................................................6

    A.    Background of the Company ................................................................................6

    B.    Defendants' Materially False and Misleading Statements....................................6

    C.    The Truth Slowly Emerges .................................................................................11

    D.    Improper Insider Selling During The Class Period..............................................16

V.     CLASS ACTION ALLEGATIONS ...........................................................................17

VI.    UNDISCLOSED ADVERSE FACTS ........................................................................20

VII.   LOSS CAUSATION.....................................................................................................21

VIII.  SCIENTER ALLEGATIONS.....................................................................................22

IX.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-
       MARKET DOCTRINE ................................................................................................23

X.     NO SAFE HARBOR ....................................................................................................24

XI.    COUNTS AGAINST DEFENDANTS........................................................................25

    COUNT I ..........................................................................................................................25

    COUNT II .........................................................................................................................29

XII.   PRAYER FOR RELIEF ..............................................................................................30

XIII.  JURY TRIAL DEMANDED .......................................................................................31

Plaintiff Melanie Davis ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of public filings made by Skullcandy, Inc. ("SKUL" or the "Company") and other related parties and non-parties with the Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference call transcripts, and postings on SKUL's website concerning the Company's public statements; and (d) review of other publicly available information concerning SKUL and the Individual Defendants.

## I.    NATURE OF THE ACTION

1.    This is a class action on behalf of all persons or entities that purchased or otherwise acquired SKUL securities between August 7, 2015 and January 11, 2016, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    SKUL is a designer, marketer and distributer of audio and gaming headphones, earbuds, speakers and other accessories under the Skullcandy, Astro Gaming and 2XL brands. The Company offers an array of styles and price points and includes audio products and categories, such as gaming and sports performance, women's and wireless offerings, as well as partnerships with manufacturers to license its brand.

3.      During the Class Period, Defendants made false and misleading statements and failed to disclose material facts concerning SKUL's operations and financial results, including issues with its largest Chinese distributor.  In addition, Defendants misled the market by issuing false and misleading earnings guidance.  As the direct result of Defendants' wrongful actions, the common stock of SKUL traded at artificially inflated prices throughout the Class Period.

4.      Further, Defendants' wrongful conduct and their dissemination of false and misleading statements enabled Defendant Rick Alden ("Alden"), who is the Company's Founder, former CEO and a current director, to engage in improper insider trading. Approximately one month after the Company unexpectedly raised guidance, Alden and Relevant Non-Defendant Ptarmagin, LLC ("Ptarmagin") began disposing their shares through prearranged stock trading plans established on June 5, 2015.  Between September 8, 2015, and January 7, 2016, Alden and Ptarmagin sold 775,000 beneficially owned SKUL shares into the open market for proceeds of over $4 million.  Ptarmagin is the family trust established for the benefit of Alden's family.

5.      When Defendants fully disclosed the truth regarding the Company's true business prospects on January 11, 2016, SKUL's shares plummeted $1.29 per share, or more than 28%, to close at $3.26 per share on January 12, 2016, on unusually heavy volume.

6.      As further detailed below, throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose to investors that (i) the third quarter and full year 2015 revenue and net income guidance issued during the Company's second quarter 2015 earnings announcement and subsequent conference call were materially false and

misleading in that the projections were unattainable; (ii) the fourth quarter and full year 2015 revenue and net income guidance issued during the Company's third quarter 2015 earnings announcement and subsequent conference call were materially false and misleading in that the projections were unattainable; (iii) Defendants intentionally failed to timely disclose the Company's challenges with its largest China distributor; (iv) Defendant Rick Alden and Ptarmagin, with full knowledge of the undisclosed materially adverse facts alleged herein, embarked on a selling spree of personal holdings of SKUL common stock at artificially inflated prices, which sales they made without first disclosing these adverse material facts known to Defendants and withheld from the market, which permitted them to engage in unusual insider selling and realize proceeds in excess of $4 million; and (v) as a result of the foregoing, Defendants' statements about SKUL's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

7.      As a direct result of Defendants' wrongful actions, SKUL's common stock traded at artificially inflated prices throughout the Class Period.  Defendants' wrongful conduct and their dissemination of false and misleading statements enabled Defendants Alden and Ptarmagin to engage in improper insider trading.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## II.   <u>JURISDICTION AND VENUE</u>

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).   A substantial portion of the acts in furtherance of the alleged fraud, including the effects of the fraud, have occurred in this Judicial District.   In addition, the Company's principal executive offices are located within this Judicial District.

12.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## III.   <u>PARTIES</u>

13.      Plaintiff Melanie Davis, as set forth in the accompanying certification, incorporated by reference herein, purchased SKUL common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Skullcandy, Inc. is a Delaware corporation with its principal executive offices located at 1441 West Ute Blvd., Suite 250, Park City, UT 84098.

15.     Defendant Seth "Hoby" Darling ("Darling") was, at all relevant times, President and Chief Executive Officer ("CEO") of SKUL.

16.     Defendant Jason Hodell ("Hodell") was, at all relevant times, Chief Financial Officer ("CFO") of SKUL.

17.     Defendant Richard P. "Rick" Alden was, at all relevant times, a member of SKUL's Board of Directors.  Alden founded the Company in January 2003 and served as its CEO until March 2011.

18.     Defendants Darling, Hodell, and Alden are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of SKUL's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual

Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

19.     Relevant Non-Defendant Ptarmagin, LLC's only member is the Alden Irrevocable Trust, whose sole beneficiaries are the spouse and children of Defendant Rick Alden.  Defendant Alden exercises control over the Alden Irrevocable Trust, including its investments.

**IV.     SUBSTANTIVE ALLEGATIONS**

    **A.     Background of the Company**

20.     Skullcandy, Inc. is a designer, marketer and distributer of audio and gaming headphones, earbuds, speakers and other accessories under the Skullcandy, Astro Gaming and 2XL brands.  The Company offers an array of styles and price points and includes audio products and categories, such as gaming and sports performance, women's and wireless offerings, as well as partnerships with manufacturers to license its brand.

    **B.     Defendants' Materially False and Misleading Statements**

21.     Throughout the Class Period, Defendants repeatedly made false and misleading statements and omissions concerning the Company's business, operations and prospects.  These false and misleading statements created a false impression concerning SKUL's business and operational status and future growth prospects.

22.     On August 6, 2015, SKUL issued a press release entitled "Skullcandy Second Quarter Operating Income and Earnings Per Share Exceed Expectations; Raises Guidance for Full Year Earnings Per Share."  Therein, the Company raised full year 2015 EPS guidance to between $0.41 and $0.43, an increase from its previous guidance of $0.36 and $0.40.  The

Company issued this increased guidance at a time when certain insiders were poised to capitalize on the expected increase in the Company's stock, as discussed in greater detail below.  In the press release, the Company, in relevant part, stated:

> PARK CITY, Utah, Aug. 6, 2015 (GLOBE NEWSWIRE) -- Skullcandy, Inc. (NASDAQ:SKUL) today announced financial results for the second quarter ended June 30, 2015.
>
> **Second quarter 2015 results versus the same quarter in the prior year**
>
> - Net sales: $58.0 million vs. $53.9 million, up 8% (up 10% currency neutral)
> - Gross margin: 42.8% vs. 45.0%, down 220 basis points (down 130 basis points currency neutral)
> - Selling, general and administrative expense (SG&A): $23.8 million vs. $22.9 million, up 4% (up 7% currency neutral)
> - SG&A expense as a percent of net revenue: 41.1% vs. 42.6%
> - Operating income: $1.0 million vs. $1.3 million, down $0.3 million (down $0.02 million currency neutral)
> - Net income per share: 4.2 cents vs. 5.5 cents, down 24% (up 17% currency neutral)
>
> "Everything we do at Skullcandy and Astro puts the consumer at the center. We strive to inspire people to live life at full volume through our innovations, products, and brand storytelling," said Hoby Darling, President and Chief Executive Officer. "Through this dedication to our consumer, Skullcandy once again was the number one headphone choice in units for the second quarter and year to date. Astro also outpaced its competition in the gaming market growing nearly three times faster than the industry during Q2. Our product quality and innovation engine continues to strengthen as evidenced by the accolades and Editor's Choice awards the Grind and Strum, two recent product introductions, received from leading audio publications while Astro continues to design the best high end gaming headphones in the world. We continue to make smart investments in innovation and demand creation, with double digit year over year increases in spend, while maintaining tight control over non-revenue driving expenses. ***Looking ahead, we are well positioned to add more fuel to our revenue engine as we see accelerating growth and new shelf space during the upcoming holiday season to kickoff next year with great brand and product momentum***."

* * *

**2015 Full Year and Third Quarter Financial Outlook**

***For the full year 2015, the Company continues to forecast net sales to increase 13-15% over 2014 levels. The Company also raises guidance for net income on a U.S. GAAP fully-diluted per share basis of a range of $0.41 to $0.43 per share, an increase from its previous guidance of $0.36 to $0.40.***

***For the third quarter of 2015, the Company currently forecasts net sales to increase at a growth rate of 17-19% over 2014 levels and net income on a U.S. GAAP fully-diluted per share basis of a range of $0.07 to $0.08.***

23.     During the Q2 2015 earnings call on August 6, 2015, Defendant Hodell provided updated guidance for the full year, third quarter and fourth quarter of 2015.  In regards to full-year guidance, Defendant Hodell stated:

[O]n revenue, we still expect net revenue to grow at 13% to 15% rate for full year 2015 versus 2014. This growth is being driven by new product launches and investments in listening stations and fixtures at our retail partners. We estimate the foreign exchange drag on full year revenue growth at approximately 250 basis points.

* * *

We are managing SG&A to aggressively leverage the business and drive operating profitability.  On SG&A, we are now targeting 36% of net revenues or less and are currently expecting SG&A year-over-year dollar growth of approximately 2%.

Due to these combined effects, we are pleased to raise our expectation of operating income to a range of $17.5 million to $18.5 million.

For other expense, we are still modeling an annual total of $1.2 million of expense. For taxes, we are raising our expectation of the marginal annual rate to 27.5% as discussed earlier and then adding our year-to-date discreet tax expense items of $150,000.

***Lastly, based on our updated view of the second half, we are proud to raise our annual EPS guidance to a range of $0.41 to $0.43 from our previous guidance of $0.36 to $0.40. This mid-point point implies year-over-year growth of EPS 56% or 92% on a constant currency basis.***

24.     In regards to Q3 and Q4 guidance, Defendant Hodell stated:

***[W]e are currently forecasting net sales increased 17% to 19% over 2014 levels, with growth led by our new product introductions, continuing success of our Wireless Hesh 2 and year-over-year increases with nearly all of our largest key accounts.***

We estimate the foreign-exchange drag on Q3 year-over-year revenue growth at approximately 320 basis points. We are currently targeting a Q3 gross margin in the range of 40% to 41% or 41.3% to 42.3% on a constant currency basis.

Another important note on our Q3 gross margin, we are expediting our new product suite to market and are therefore incurring an approximate $1 million charge for airfreight within our gross margin in Q3, which alone reduce our gross margin by 140 basis points.

We expect SG&A to be within a range of $24.3 million to $24.8 million for the quarter and growing year-over-year in absolute dollar terms by approximately 7% to 8%. This SG&A increase the strategic and closely aligned to where we have traditionally seen returns on our marketing investments in terms of sell-through and brand.

* * *

***[I]n Q4, we are currently forecasting net sales to increase 13% to 15% over 2014 levels, with growth led by our International segment and new product introductions.***

* * *

***We are expecting Q4 GAAP diluted EPS of $0.42 to $0.44.*** This mid-point implies year-over-year growth of EPS of 64% or 80% on a constant currency basis. In putting forth this new outlook, we want to remind everyone of the complexity of accurately assessing future earnings and revenue growth given the competitive nature of the industry, the difficulty in predicting sales of our products by key retailers, changes in technology, sourcing costs, trends in consumer preferences, because of our consumer and innovation focus, brand

strength, quality products, strong cash position and dedicated team of employees, athletes, sales reps and distributors, we are confident we can achieve our vision of being a global audio leader, deliver profitable growth and increase shareholder value.

25.     On this news, shares of SKUL increased $0.68 per share, approximately 9.32%, to close at $7.98 per share on August 7, 2015, on unusually heavy volume.

26.     On August 7, 2015, the Company filed its Quarterly Report with the SEC on Form 10-Q for the quarterly period ended June 30, 2015.  The Form 10-Q was signed by Defendants Darling and Hodell, and reaffirmed the Company's financial results previously announced on August 6, 2015.

27.     On September 8, 2015, SKUL filed a Current Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 with the SEC on Form 8-K.  Therein, the Company indicated, for the first time, that:

> On June 5, 2015, Rick Alden, a member of the board of directors of Skullcandy, Inc. (the "Company") and Ptarmagin, LLC ("Ptarmagin"), each adopted a prearranged stock trading plan in accordance with Rule 10b5-1 under the Securities Exchange Act of 1934, as amended. ***The Alden Irrevocable Trust, of which Mr. Alden's family members are the beneficiaries, is the sole member of Ptarmagin.*** Rule 10b5-1 of the Securities Exchange Commission (the "SEC") permits individuals to adopt predetermined written plans for trading specified amounts of company stock when they are not in possession of material non-public information. These plans enable gradual asset diversification while simultaneously minimizing the market effect of stock trades by spreading them out over an extended period of time. The 10b5-1 plans involve only a portion of the shares owned by Mr. Alden and Ptarmagin, respectively. ***The plan adopted by Mr. Alden involves a market order to sell up to 25,000 shares of the Company's common stock per month effective September 8, 2015 and expiring August 9, 2016, for a total of up to 300,000 shares. The plan adopted by Ptarmagin involves a market order to sell up to 37,500 shares of the Company's common stock per week effective September 10, 2015 and expiring September 6, 2016, for a total of up to 1,987,500 shares.*** Except as required by law, the Company does not undertake to report Rule 10b5-1 trading plans by other officers or

directors of the Company or to report codifications, transactions or other activities under Rule 10b5-1 trading plans or the similar plans of any of its officers or directors.

28.     The statements contained above were materially false and/or misleading when made because Defendants failed to disclose or indicate that: (i) the third quarter and full year 2015 revenue and net income guidance issued during the Company's second quarter 2015 earnings announcement and subsequent conference call were materially false and misleading in that the projections were unattainable; (ii) the fourth quarter and full year 2015 revenue and net income guidance issued during the Company's third quarter 2015 earnings announcement and subsequent conference call were materially false and misleading in that the projections were unattainable; (iii) Defendants intentionally failed to timely disclose the Company's challenges with its largest China distributor; (iv) Defendant Rick Alden and Ptarmagin, with full knowledge of the undisclosed materially adverse facts alleged herein, embarked on a selling spree of personal holdings of SKUL common stock at artificially inflated prices, which sales they made without first disclosing these adverse material facts known to Defendants and withheld from the market, which permitted them to engage in unusual insider selling and realize proceeds in excess of $4 million; and (v) as a result of the foregoing, Defendants' statements about SKUL's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

### C.      The Truth Slowly Emerges

29.     On November 5, 2015, after the close of the financial markets, SKUL issued a press release entitled "Skullcandy Reports Third Quarter 16% Net Sales Growth."  In the press release, Defendants continued to mask the Company's issues, failing to fully disclose the extent

to which the Company's operations were suffering.   Therein, the Company, in relevant part, stated:

> PARK CITY, Utah, Nov. 5, 2015 (GLOBE NEWSWIRE) -- Skullcandy, Inc. (NASDAQ:SKUL) today announced financial results for the third quarter ended September 30, 2015.
>
> **Third quarter 2015 reported results versus the same quarter a year ago**
>
> - Net sales: $67.2 million vs. $58.1 million, up 16% (up 19% currency neutral)
> - Gross margin: 41.0% vs. 45.3%, down 430 basis points (down 272 basis points currency neutral)
> - Selling, general and administrative expense (SG&A): $24.5 million vs. $22.7 million, up 8%
> - SG&A expense as a percent of net sales: 36.4% vs. 39.2%
> - Operating income: $3.1 million vs. $3.6 million, down $0.5 million (up 29% currency neutral)
> - Earnings per share $0.08, up 8% (up 29% currency neutral)
>
> "Our third quarter performance was highlighted by twenty two percent net sales growth in the U.S. and fourteen percent constant currency net sales growth in our international markets. Our product innovation, demand creation and distribution strategies are resonating with Skullcandy and Astro consumers around the world," said Hoby Darling, President and Chief Executive Officer. "Our deep relationship with our consumer, coupled with our ability to be nimble and quick to market allows us to serve our consumer innovative and creative products that align with current trends. Our new Skullcandy wireless ear buds and headphones are a great example and an awesome addition to our existing product lineup that already includes several of the best-selling styles at retail. Strong sell-through of our new wireless products and increased year over year sales of our traditional wired products contributed to Skullcandy being the number one chosen headphones in the US for the fourth consecutive quarter. At the same time, Astro continues to dominate the high end of the gaming market with its leading portfolio of next-generation compatible headsets that now include Halo 5 and Call of Duty licensed editions. We remain very confident in the strategic course that we have set for the Company."
>
> * * *
>
> **2015 Full Year and Fourth Quarter Financial Outlook**

*For the full year 2015, the Company forecasts net sales to increase 10-11% over 2014 levels, or approximately 13% on a constant currency basis, and net income on a U.S. GAAP fully-diluted per share basis of a range of $0.37 to $0.39, an increase of 42% over 2014 levels, or approximately 82% on a constant currency basis.*

*For the fourth quarter of 2015, the Company forecasts net sales to increase 5-7% over 2014 levels, or approximately 9% on a constant currency basis, and net income on a U.S. GAAP fully-diluted per share basis of a range of $0.38 to $0.40, an increase of 49% over 2014 levels, or approximately 65% on a constant currency basis.*

30.     During the Q3 2015 earnings call on the same day, Defendant Hodell provided updated guidance for the full year and fourth quarter of 2015:

[O]ur full year outlook forecast Q4 to increase 5% to 7% over 2014 levels or 8% to 10% on a constant currency basis with growth led by our domestic Skullcandy brand business and new product introductions while international sales will be tempered due to foreign exchange rate pressure and slower-than-expected growth and distributor transitions in Europe and China.

We are targeting a Q4 gross margin in the range of 41.5% to 42.5% or 42.7% to 43.7% on a constant currency basis with an expected gross margin foreign currency drag of 120 basis points. This is lower than our previous estimate as the moderated sales internationally have materially reduced our ear bud sales in Q4.

31.     On this news, shares of SKUL decreased $1.53 per share, more than 24%, to close at $4.81 per share on November 6, 2015, on unusually heavy volume.

32.     Despite this partial disclosure, the Company's common stock remained inflated due to Defendants' failure to fully disclose the issues plaguing the Company's business operations.

33.     On November 9, 2015, the Company filed its Quarterly Report with the SEC on Form 10-Q for the quarterly period ended September 30, 2015.  The Form 10-Q was signed by

Defendants Darling and Hodell, and reaffirmed the Company's financial results previously announced on November 5, 2015.

34.    On November 18, 2015, the Company presented at the Furey Hidden Gems Conference, where it reiterated its previously disclosed guidance:

2015 Financial Summary

• Maintained position of #1 headphones units sold, US NPD

• Net Sales projected to increase 10-11% | 13-14% in constant currency

• Gross margins of approximately 41.7% with 120 bps headwind from F/X

• SG&A dollars down 1 to 2% YoY |below 36% of net sales vs. 39.9% LY

• Operating Income up 40% to $16 - $17 million | up 93% in constant currency

• EPS up 42% to $0.37 - $0.39 | up 82% in constant currency

35.    The full extent of SKUL's fraud was revealed on January 11, 2016, SKUL issued a press release entitled "Skullcandy Updates Fourth Quarter Outlook."  The press release, which updated the Company's financial outlook for the fourth quarter ended December 31, 2015, and announced that it had missed Q4 2015 net sales projections, stated:

**Acquires Minority Interest in Mexico Joint Venture**

**Management to Present at 2016 ICR Conference**

PARK CITY, Utah, Jan. 11, 2016 (GLOBE NEWSWIRE) -- Skullcandy, Inc. (NASDAQ:SKUL) today updated its outlook for the fourth quarter ended December 31, 2015.

<u>**Updated Fourth Quarter Outlook**</u>

***For the fourth quarter, the Company now expects net sales to be approximately flat with 2014 levels, or increase approximately 2% on a currency neutral basis.***

*The Company had previously forecasted net sales to increase by approximately 5-7%, or approximately 8-10% on a currency neutral basis, compared to the same quarter a year ago. Based on the sales shortfall attributable to disappointing holiday results, combined with the impact on gross margin from product mix shift driven by a higher percentage of gaming headset sales during the holiday season, the Company now expects fourth quarter diluted earnings per share on a U.S. GAAP basis between $0.20 and $0.22, compared to its previous outlook of $0.38 to $0.40.*

*This new outlook includes a $1.6 million pre-tax allowance for bad debt charge related to further challenges with a China distributor.* Excluding this China related charge and associated tax rate impacts, fourth quarter diluted earnings per share is expected to be between $0.25 and $0.27.

The Company's financial results are subject to finalization and audit of its financial closing procedures and results.

"During the fourth quarter, including the holiday period, we experienced solid consumer demand for both the Skullcandy and Astro brands. Skullcandy domestic sell-through increased mid-teens year-over-year driven by a triple digit gain in our wireless headphone business according to NPD data. At the same time, Astro exceeded expectations and strengthened its connection with elite gamers through the recent launch of our A40 TR suite of products. However, we are disappointed that our strong sell-through performances could not overcome the softness in the U.S. audio headphone market which was unexpectedly down in the fourth quarter. This headwind, as well as aggressive promotional activity by our competitors, negatively affected our replenishment business for Skullcandy branded products contributing to the majority of our revenue miss, combined with a product mix shift that negatively weighed on gross margins," explained Skullcandy President and CEO Hoby Darling.

"We also chose to minimize sales to discount channels to further protect the Skullcandy brand and our retailers, as well as continue the clean-up work with our largest China distributor during the fourth quarter, as we shift to a more direct model in China," added Darling.

Darling continued, "Our recent market share gains and strong pipeline of innovative new products have us cautiously optimistic about our near-term growth prospects, particularly for our gaming and wireless businesses. Our outlook is being balanced by the challenging audio market conditions in the U.S. and our ongoing work to improve certain international markets. As a result, in 2016 we

now expect net sales to grow in the mid to high-single digits and earnings per share to grow at a mid-teens rate over 2015 results, excluding the 2015 Q4 bad-debt allowance for our China distributor."

The Company expects to report its actual results for the fourth quarter and full year 2015 and provide a full year outlook for 2016 in March 2016. This press release contains certain non-GAAP information, such as currency neutral basis, which is intended to provide visibility into the Company's operations by excluding the effects of foreign currency exchange rate fluctuations.

36.     On this news, shares of SKUL plummeted $1.29 per share, more than 28%, to close at $3.26 per share on January 12, 2016, on unusually heavy volume.

37.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**D.     Improper Insider Selling During The Class Period**

38.     As a direct result of Defendants' wrongful actions, SKUL's common stock traded at artificially inflated prices throughout the Class Period.  Defendants' wrongful conduct and their dissemination of false and misleading statements enabled director Rick Alden, the Company's founder, and Ptarmagin, LLC, one of SKUL's largest holders, to engage in improper insider trading.

39.     Due to Alden and Ptarmagin's desire to dump their shares of SKUL into the public market, the Company was caused to make false and misleading statements, including false and misleading projections for the third quarter, fourth quarter, and full year 2015, which artificially inflated the price of the shares during the Class Period, and the price at which Alden and Ptarmagin were able to sell their shares.

40.     Defendants Rick Alden and Ptarmagin, LLC's stock transactions during the Class

Period are as follows:

| Date | Entity | Relation | Shares | Price | Proceeds |
|---|---|---|---|---|---|
| 09/08/15 | Alden, Rick | Director | 25,000 | $6.79 | $169,750 |
| 10/13/15 | Alden, Rick | Director | 25,000 | $5.73 | $143,250 |
| 11/10/15 | Alden, Rick | Director | 25,000 | $4.62 | $115,500 |
| 12/08/15 | Alden, Rick | Director | 25,000 | $4.15 | $103,750 |
| **Total Alden** | | | **100,000** | | **$532,250** |
| | | | | | |
| 09/10/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $6.59 | $247,125 |
| 09/17/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $6.46 | $242,250 |
| 09/24/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $6.19 | $232,125 |
| 10/01/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $5.55 | $208,125 |
| 10/08/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $5.84 | $219,000 |
| 10/15/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $5.63 | $211,125 |
| 10/22/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $5.67 | $212,625 |
| 10/29/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $5.63 | $211,125 |
| 11/05/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $6.14 | $230,250 |
| 11/12/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.34 | $162,750 |
| 11/19/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.26 | $159,750 |
| 11/27/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.14 | $155,250 |
| 12/03/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.25 | $159,375 |
| 12/10/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.14 | $155,250 |
| 12/17/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.43 | $166,125 |
| 12/24/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.58 | $171,750 |
| 12/31/15 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.73 | $177,375 |
| 01/07/16 | Ptarmagin, LLC | 10% Owner | 37,500 | $4.56 | $171,000 |
| **Total Ptarmagin** | | | **675,000** | | **$3,492,375** |
| | | | | | |
| **Total Combined** | | | **775,000** | | **$4,024,625** |

## V.    <u>CLASS ACTION ALLEGATIONS</u>

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or

otherwise acquired SKUL securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of SKUL and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

42.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Throughout the Class Period, SKUL's securities were actively traded on the NASDAQ Global Market ("NASDAQ") (an open and efficient market) under the symbol "SKUL." Millions of SKUL shares were traded publicly during the Class Period on the NASDAQ. As of October 31, 2015, SKUL had 28,530,493 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by SKUL and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)      whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b)      whether Defendants participated in and pursued the common course of conduct complained of herein;

c)      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of SKUL;

d)      whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of SKUL;

e)      whether the market price of SKUL common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)      the extent to which the members of the Class have sustained damages and the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VI.     UNDISCLOSED ADVERSE FACTS

47.     The market for SKUL's securities was an open, well-developed and efficient market at all relevant times.  As a result of these materially false and misleading statements and failures to disclose described herein, SKUL's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired SKUL's securities relying upon the integrity of the market price of the Company's securities and market information relating to SKUL and have been damaged thereby.

48.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of SKUL's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, as well as its business, accounting, financial operations and prospects, as alleged herein.

49.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about SKUL's financial well-being and prospects.

50.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## VII.   **LOSS CAUSATION**

51.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of SKUL's securities and operated as a fraud or deceit on Class Period purchasers of SKUL's securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of SKUL's securities fell precipitously as the prior inflation came out of the Company's stock price.  As a result of their purchases of SKUL's securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

52.     By failing to disclose the true state of the Company's financial statements, investors were not aware of the true state of the Company's financial status.   Therefore, Defendants presented a misleading picture of SKUL's business practices and procedures.   Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused SKUL to conceal the truth.

53.     Defendants' false and misleading statements had the intended effect and caused SKUL's common stock to trade at artificially inflated levels throughout the Class Period.   The stock price drop discussed herein caused real economic loss to investors who purchased the Company's securities during the Class Period.

54.     The decline in the price of SKUL's common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.   The timing and magnitude of SKUL's common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.   The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of SKUL's securities and the subsequent decline in the value of SKUL's securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## VIII.   SCIENTER ALLEGATIONS

55.     As alleged herein, the Individual Defendants acted with scienter in that Individual Defendants knew that the public documents and statements issued or disseminated in the name of

the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

56.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding SKUL, their control over, receipt and/or modification of SKUL's allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning SKUL, participated in the fraudulent scheme alleged herein.

## IX.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

57.     At all relevant times, the market for SKUL's securities was an efficient market for the following reasons, among others:

a)     SKUL securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

b)     As a regulated issuer, SKUL filed periodic public reports with the SEC and the NASDAQ;

c)     SKUL securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace; and

d)    SKUL regularly issued press releases which were carried by national newswires.  Each of these releases was publicly available and entered the public marketplace.

58.    As a result of the foregoing, the market for SKUL's securities promptly digested current information regarding SKUL from all publicly available sources and reflected such information in SKUL's stock price. Under these circumstances, all purchasers of SKUL's securities during the Class Period suffered similar injury through their purchase of SKUL's securities at artificially inflated prices and a presumption of reliance applies.

59.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Plaintiff's fraud claims are grounded in Defendants' omissions of material fact of which there is a duty to disclose. As this action involves Defendants' failure to disclose material adverse information regarding SKUL's business practices, financial results and condition and internal controls—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered such information important in the making of investment decisions.

## X.   NO SAFE HARBOR

60.    The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing

facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

61.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of SKUL who knew that the statement was false when made.

## XI.   <u>COUNTS AGAINST DEFENDANTS</u>

<u>COUNT I</u>
**Violation of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.  This claim is asserted against all Defendants.

63.     During the Class Period, SKUL and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of SKUL securities; and (iii) cause Plaintiff and the other members of the Class to purchase SKUL securities at artificially inflated prices.  In

furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

64.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SKUL securities in violation of §10(b) of the Exchange Act and Rule 10b-5.  Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.  The Individual Defendants are also sued herein as controlling persons of SKUL, as alleged herein.

65.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

66.     SKUL and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails,

engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of SKUL as specified herein. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SKUL's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SKUL and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of SKUL's securities during the Class Period.

67. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and

performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

68.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SKUL's operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

69.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SKUL securities was artificially inflated during the Class Period.  In ignorance of the fact that the market price of SKUL shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or

recklessly disregarded by Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired SKUL securities during the Class Period at artificially inflated high prices and were damaged thereby.

70.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of SKUL, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired SKUL securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

71.     By virtue of the foregoing, SKUL and the Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

72.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act**
**Against The Individual Defendants**

73.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74.     The Individual Defendants were and acted as controlling persons of SKUL within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations

and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

76.     As set forth above, SKUL and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## XII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

a)      Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the

Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)      Awarding Plaintiff and the other members of the Class damages in an amount

which may be proven at trial, together with interest thereon;

c)      Awarding Plaintiff and the members of the Class pre-judgment and post-judgment

interest, as well as their reasonable attorneys' and experts' witness fees and other

costs; and

d)      Awarding such other relief as this Court deems appropriate.

## XIII.   **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Respectfully Submitted,


Dated: May 23, 2014                          By:/s/ Jeffrey L. Silvestrini
                                                     Jeffrey L. Silvestrini
                                                     *Attorneys for Plaintiff Melanie Davis*

**SAXENA WHITE P.A.**                    **COHNE KINGHORN, P.C.**
Joseph E. White, III (pro hac vice to be filed)   Jeffrey L. Silvestrini, Esq.
Lester R. Hooker (pro hac vice to be filed)       257 East 200 South Suite 700
5200 Town Center Circle                  Salt Lake City, UT 84111
Suite 601                                Telephone: (801) 363-4300
Boca Raton, FL 33486
Telephone: (561) 394-3399
Facsimile:  (561) 394-3082

**RYAN & MANISKAS, LLP**
Richard A. Maniskas (pro hac vice to be filed)
Katharine Ryan (pro hac vice to be filed)
995 Old Eagle School Rd., St. 311
Wayne, Pennsylvania 19087
Telephone: (484) 588-5516
Facsimile:  (484) 450-2582

## CERTIFICATION

I, _Melanie Davis_ ("Plaintiff") declare, as to the claims asserted under the federal securities laws that

1.      Plaintiff has reviewed the complaint and authorizes its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      Plaintiff's purchase and sale transaction(s) in the Skullcandy, Inc. (NASDAQ: SKUL) security that is the subject of this action during the Class Period is/are as follows:

PURCHASERS

| Buy Date | Shares | Price per Share |
|---|---|---|
| 1-4-16 | 1000 | $4.72 |
| | | |
| | | |
| | | |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
| 1-12-16 | 1000 | $3.75 |
| | | |
| | | |
| | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below_____

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __2__ day of __Feb__, ~~2015~~ 2016.

_Melanie J Davis_
Signature

_Melanie Davis_
Print Name